IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

        vs.                                                        Case No. 1:21-cr-793-KWR

RICHARD KUYKENDALL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Supplemental Jury Questionnaire and Larger Jury Pool from Northern Jury Wheel (**Doc. 80**). Having considered the motion and the relevant law, the Court finds that the motion is not well-taken, and therefore, is **DENIED**.

## DISCUSSION

Defendant Richard Schuyler Kuykendall faces one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924, in connection with a shooting that occurred in Albuquerque, New Mexico on May 12, 2021. A jury trial is set for June 14, 2022.[1]

The events surrounding Defendant's arrest has garnered, Defendant alleges, "negative and biased publicity." See **Doc. 99, at 3**. Accordingly, Defendant requests that prospective jurors be required to complete a supplemental jury questionnaire before trial. See **Doc. 80, at 3–5**. Defendant also requests that the Court "expand the pool of prospective jurors [to include] the other jury wheels in this district." See **Doc. 99, at 6**. The Court finds that Defendant has not carried his burden to show that a supplemental juror questionnaire or a wider jury pool are necessary. The

---

[1] The parties orally agreed to a trial date at a scheduling conference on March 10, 2022.

Court will, however, permit the parties additional time, or at least one hour, to conduct voir dire of prospective jurors.

I.  **The Court Declines to Draw from an Expanded or Larger Jury Pool.**

The Sixth Amendment guarantees a defendant in a criminal trial the right to an impartial jury drawn from a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 537 (1975); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a…trial[] by an impartial jury of the State and district wherein the crime shall have been committed."). Additionally, the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq*., "ensures that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service." *See United States v. Shinault*, 147 F.3d 1266, 1270 (10th Cir. 1998) (internal alterations omitted). A defendant does not, however, have the right to a jury of any particular composition and the jury actually chosen need not "mirror the community." *See Taylor*, 419 U.S. at 538.

In 2015, pursuant to the Jury Selection and Service Act, the District of New Mexico adopted a Modified Selection Jury Plan (the "Plan"). *See* Order Adopting Modified Jury Plan, MISC No. 15-MC-04-42. The Plan created two jury divisions, a Northern Division and a Southern Division, "each composed of counties from which jurors will be drawn for each place of [the] holding court." *Id.* at 1. The creation of two divisions was to ensure impartial trials, avoid unnecessary expense, and reduce burdens on persons reporting for jury service. *Id.*

In the instant case, Defendant argues that drawing from a wider jury pool is necessary to protect his right to a fair and impartial jury. *See* **Doc. 80, at 6**. The United States contends that Defendant has not met his burden to draw from a wider jury pool because he "has not alleged a

distinctive group that has been systematically excluded nor has he provided any evidence in support of such an allegation." *See* **Doc. 97, at 3**.

Defendant clarifies that he does not seek to challenge the current jury plan or argue that it does not represent a fair cross section of the community. *See* **Doc. 99, at 6**. Instead, Defendant seeks to draw a larger jury pool to "include jurors from [the] northern jury wheel" and "other jury wheels in this district." *See* **Doc. 80, at 1**; **Doc. 99, at 6**. Defendant maintains that "[g]iven the intense pretrial publicity this case has received in Albuquerque, it is likely only a limited number of jurors may not have heard about the case or formed an opinion." *See* **Doc. 99, at 6**. Therefore, Defendant asserts, if the jury pool is "drawn primarily from the district's Albuquerque jury wheel," it will result in a venire panel that has "most assuredly been exposed to the biased publicity…and will result in a violation of Mr. Kuykendall's right to a fair and impartial jury." *Id.* The Court disagrees.

First, the Court already draws from a wide geographic region according to the District of New Mexico's jury selection process. This Court is located in Albuquerque which is situated within the boundaries of the Northern Division. The Northern Division consists of 22 counties: Bernalillo, Cibola, Colfax, Curry, De Baca, Guadalupe, Harding, Los Alamos, McKinley, Mora, Quay, Rio Arriba, Roosevelt, San Juan, San Miguel, Sandoval, Santa Fe, Socorro, Taos, Torrance, Union, and Valencia. *See* 15-MC-04-42, at 1. Under the Plan, jurors are randomly selected from "the voter registration list of **each county within a jury division**…to ensure that **each county in the jury division is substantially proportionately represented** in the Master Jury Wheel that is being formed." *Id.* at 2 (emphasis added). Thus, prospective jurors are not drawn primarily from

the City of Albuquerque or Bernalillo County; they are drawn from *all* counties in the Northern Division.[2]

Second, potential jurors are not expected "to be totally ignorant of the facts surrounding a case." *See Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006). "Rather, jurors are sufficiently impartial under constitutional standards if they can lay aside any preconceived opinions regarding the outcome of the case and 'render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). In the cases where pretrial publicity may affect jury selection, a court may consider: (1) "the nature of the publicity and its temporal nexus to the trial," and (2) "the effect of the publicity on the potential jury pool." *Id.* at 631. The defendant bears the burden of establishing juror partiality. *Id.* at 627.

Defendant cites numerous media articles as evidence of nationwide media attention, and the Court does not dispute that there has been media coverage of the alleged incident. However, the media coverage cited occurred in May 2021 and shortly after the alleged offense, which was nearly one year ago. The media coverage has not been extensive and continuous, or in a manner that would indicate a statewide jury pool or a deviation from the Plan is necessary in order to seat an impartial jury. Nor can the Court presume prejudice or partiality of prospective jurors in this case. *See Goss*, 439 F.3d at 628 (explaining that prejudice is presumed only where publicity creates "a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial"); *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000) (holding that prejudice will be presumed where a defendant can demonstrate that an "irrepressibly hostile

---

[2] The United States also raises that because of the size of courtrooms, if the prospective jury pool consists of "more than 70 or so people who actually appeared for jury service, the Court may have to conduct jury selection twice…which could require another half day." *See* **Doc. 97, at 4**. The Court takes note of the Government's concern; however, the Court is prepared to adapt or utilize another courtroom in order to seat an impartial jury as the Sixth Amendment so requires.

4

attitude pervaded the community," not just that "all the potential jurors knew about the case and that there was extensive pretrial publicity"). Thus, voir dire questioning concerning the pretrial publicity is sufficient to remedy concerns about biased jurors. The Court concludes that Defendant has failed to show that the pretrial publicity surrounding this case is such that the Court cannot obtain a fair and impartial jury drawn from the pool of potential jurors in the Northern Division.

## II.     The Court Declines to Order Supplemental Juror Questionnaires.

Voir dire examination "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). The obligation to impanel an impartial jury lies in the first instance with the trial judge, and because judges must rely largely on their immediate perceptions, "federal judges have been accorded ample discretion in determining how best to conduct the voir dire." *See Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). Thus, "[t]he scope of voir dire examination is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion." *United States v. Espinosa*, 771 F.2d 1382, 1405 (10th Cir. 1985).

Generally, when this Court empanels a jury, a juror questionnaire is sent to the prospective panel of jurors. Juror questionnaires are a part of the jury selection process because answers to a questionnaire may have one or more of the following effects: narrowing of the jury or venire pool, further questioning by the Court during voir dire, and the exercise of for-cause and peremptory challenges by counsel. Questionnaires may also enhance judicial economy by providing needed information to the parties prior to voir dire, which allows more time for questioning on other substantive matters during the in-court proceedings. *See United States v. Sandoval*, No. CR 04-02362 JB, 2006 WL 1304955, at *3 (D.N.M. Feb. 1, 2006).

Defendant seeks to send a supplemental questionnaire to prospective jurors in order to "explore the venire's exposure [to] the pretrial publicity." *See* **Doc. 80, at 4**. Defendant's proposed questionnaire contains eight questions, including one which provides a detailed summary of the facts at issue in this case. *See* **Doc. 80-1, Ex. A**. Defendant maintains that a supplemental questionnaire is necessary because this case is "not merely about whether Kuykendall possessed a firearm as a felon," rather, it also involves "drug abuse, death, and allegations of white supremacy." **Doc. 80, at 5**. Alternatively, Defendant requests that defense counsel be permitted two hours for voir dire if the Court declines to order the supplemental questionnaire. *See* **Doc. 99, at 5**. The Court concludes that Defendant has not shown that a supplemental jury questionnaire is necessary.

The Court recognizes that supplemental questionnaires may be appropriate in certain cases. However, supplemental questionnaires are generally reserved for cases directly implicating sensitive, personal, and controversial issues. *See, e.g.*, *Sandoval*, 2006 WL 1304955, at *3–5 (ordering supplemental juror questionnaires in a case involving incest and sexual abuse of a child, and noting that a "parent's sexual abuse of a young child may be among the most difficult topics conceivable"); *United States v. Vigil*, No. CR 05-2051 JB, 2006 WL 8443824, at *1 (D.N.M. Aug. 16, 2006) (permitting comprehensive juror questionnaires for the trial of a state elected official accused of racketeering and extortion which was "one of the most publicized and controversial matters in the District's history").

Here, though the facts of this case touch on drug abuse, death, and allegations of white supremacy, the Court cannot conclude that the nature of these allegations are so sensitive or personal that a supplemental questionnaire is warranted. Additionally, by utilizing a supplemental questionnaire to determine whether potential jurors have been exposed to pretrial publicity, the Court and counsel would be deprived of the opportunity to observe the demeanor of jurors as they

answer the questions. "The trial judge's function [during voir dire] is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." *Rosales-Lopez*, 451 U.S. at 188.

Moreover, the jurors summoned in this matter will complete the standard juror qualification questionnaire and counsel will have access to the completed questionnaires. The Court intends to conduct initial voir dire and allow each side at least one hour to question the panel. If general questioning reveals panel members who may have something to say that could compromise a privacy interest or prejudice the jury panel, the panel member may be questioned at the bench outside the hearing of other panel members and the public. Thus, despite the facts alleged in this case, the standard juror questionnaire and oral voir dire will be sufficient to assist counsel in exercising juror challenges and enable the Court to select a fair and impartial jury.

## CONCLUSION

The Court denies Defendant's request for a larger jury pool and for a supplemental jury questionnaire. The Court will, however, permit the parties additional time to conduct *voir dire* of prospective jurors.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Supplemental Jury Questionnaire and Larger Jury Pool from Northern Jury Wheel (**Doc. 80**) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE