IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

        vs.                                        Case No. 1:21-cr-793-KWR

RICHARD KUYKENDALL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss the Indictment Based on Outrageous Government Conduct (**Doc. 61**). Having considered the motion and the relevant law, the Court finds that the motion is not well-taken, and therefore, is **DENIED**.

## BACKGROUND

Defendant Richard Schuyler Kuykendall faces one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924, in connection with a shooting that occurred in Albuquerque, New Mexico on May 12, 2021. The shooting resulted in the death of three individuals. The shooting was also captured on camera, but the parties, as expected, present markedly different versions of what took place, the events leading up to the shooting, and the motives behind Defendant and the deceased individuals' actions.

Defendant now argues that the conduct of the United States during its investigation of the shooting and this case is "reprehensible and warrants judicial intervention." **Doc. 61, at 2**. Defendant asserts that this Court must dismiss the indictment because the Government's conduct is "outrageously intolerable in violation of the Fifth Amendment Due Process Clause." *Id.*

## DISCUSSION

The Due Process Clause of the Fifth Amendment "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotations omitted). "When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct," *United States v. Mosley*, 965 F.2d 906, 908 (10th Cir. 1992), because prosecution in such a case would offend the Due Process Clause. *See United States v. Sneed*, 34 F.3d 1570, 1576 (10th Cir. 1994). Thus, a defendant may challenge government conduct by means of the "outrageous conduct" defense. *See Mosley*, 965 F.2d at 908–09. It "is an extraordinary defense reserved for only the most egregious circumstances." *Id.* at 910. Although the defendant has the burden of proving outrageous conduct, the defense looks only at the government's actions or behavior. *Id.* at 909.

To establish outrageous conduct, "the defendant must show either (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Garcia*, 411 F.3d 1173, 1181 (10th Cir. 2005) (internal quotation marks and citation omitted). In assessing the claims, "the relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is **so** shocking, outrageous and intolerable that it offends the universal sense of justice." *See United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996) (internal quotations omitted). The defense is "not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense." *See Mosley*, 965 F.2d at 910.

Under the first factor of the defense, government creation of a crime occurs when "there has been excessive governmental involvement in generating a new crime solely to prosecute it." *See Sneed*, 34 F.3d at 1577. Government creation also occurs when the Government induces a defendant "to become involved in the crime for the first time, rather than merely interposing itself in an ongoing criminal enterprise." *Id.* Thus, "[e]xcessive governmental involvement occurs when the government engineers and directs the criminal enterprise from start to finish and the defendant contributes nothing more than his presence and enthusiasm." *Id.* However, it is not excessive governmental involvement "to infiltrate an ongoing criminal enterprise [or] to induce a defendant to repeat or continue a crime or even to induce him to expand or extend previous criminal activity." *Id.* (internal quotations omitted) (quoting *Mosley*, 965 F.2d at 911).

Under the second factor, a defendant may prevail on the outrageous conduct defense by showing significant governmental coercion. It is unclear what a defendant must show under this factor, but coercive conduct "short of physically forcing a defendant to commit a crime has been held outrageous," and courts have also held that "[v]ery large financial inducements by government agents" amount to affirmative coercion. *See Mosley*, 965 F.2d at 912; *see also United States v. Dyke*, 718 F.3d 1282, 1288 (10th Cir. 2013). However, "[o]nly governmental coercion that is particularly egregious rises to the level of outrageous conduct." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994). Thus, for example, "government agents may employ appropriate artifice and deception in their investigation…[and] may even utilize threats or intimidation if not exceeding permissible bounds." *Mosley*, 965 F.2d at 912 (internal citations and alterations omitted). In sum, a "high degree of government involvement or coercion" is required before a defendant can prevail on the outrageous conduct defense. *See Mosley*, 965 F.2d at 912.

Defendant argues that the Government's conduct in this case is outrageous because (1) the Government has "fabricated" that Defendant is a member of the Aryan Brotherhood prison gang; (2) the Government has "disingenuously blamed" Defendant for the death of at least one of the passengers in the vehicle, despite DNA evidence to the contrary; and (3) the Government's mischaracterization of Defendant's affiliation with the Aryan Brotherhood "poses a risk to Kuykendall's life." **Doc. 61, at 6–9, 16**.  In other words, Defendant accuses the United States of lying before the Court in order to bring or maintain this case. *See e.g.*, *id.* **at 14** (claiming that the Government "fabricat[ed] a link" between Defendant and the Aryan Brotherhood).

Here, Defendant fails to demonstrate that the extraordinary circumstances needed to prevail on the defense are present.  Even assuming all the facts alleged are true, Defendant articulates no facts to show either government creation of the crime or substantial coercion.  Moreover, none of Defendant's claims of the Government's actions in this case, individually, or taken as a whole, can support an outrageous conduct defense because Defendant cannot show the conduct here is "shocking" or "offends the universal sense of justice."

Notably, the misrepresentations or fabrication of evidence that Defendant complains of is undermined by some of the evidence presented on the record.[1]  As to the Government's allegation of Defendant's possible Aryan Brotherhood membership based on his tattoos, this argument is not wholly unsupported by the record. *See* **Doc. 2, ¶¶ 5, 13** (affidavit of Special Agent Acee of the Federal Bureau of Investigation) (noting that several of Defendant's tattoos may be synonymous with the Aryan Brotherhood, including Defendant's "Shamrock, Viking warrior, lighting bolt, and 'White Boy' tattoos."); **Doc. 61-10, Ex. J, at 3** (statement of Defendant's expert, Dr. Jesse De La

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge; the Court considered the evidence presented in support of this motion only to the extent necessary for this Memorandum Opinion and Order.

4

Cruz) (acknowledging that "[t]here was a time when the Shamrock Cloverleaf with the 666 tattooed on the cloverleafs was the main tattoo used by" the Aryan Brotherhood and stating that common Aryan Brotherhood tattoos include "double lightning bolts" and "HH for 'Heil Hitler'"); **Doc. 61-1, Ex. 1, at 2** (pictures of Defendant's additional tattoos, including a purported German or Knight's Iron Cross).  Similarly, the Government's alleged theory of the case or allegation that Defendant's possession of the weapon may have been more than fleeting is not wholly unsupported by the record.  *See, e.g.*, **Doc. 61-6, Ex. F, at 3** (Albuquerque Police Department Crime Scene Report) ("Nikki had told detectives that her husband [the car's driver] and Jimmy [the front seat passenger] had gone to settle a dispute with a male subject known as, 'Spider.' Spider [the backseat passenger] had reportedly done something to a mutual friend of theirs [Defendant].").  Additionally, the United States represents, and Defendant does not contest, that although Defendant initially faced a threat from an Aryan Brotherhood member, the Albuquerque Police Department "confronted [the threat] in order to protect Defendant."  *See* **Doc. 66, at 8 ¶ 5**.

    Thus, contrary to Defendant's assertion that the United States is "fabricating evidence," the record shows that the Government's claims, although considerably different from Defendant's version of events and legal theories, have some basis in fact.  In sum, under a totality of the circumstances analysis, the Court finds that these facts simply do not constitute outrageous conduct.  Even if some challenged conduct is "so outrageous as to offend fundamental canons of decency and fairness," it remains that "the limitations of the Due Process Clause come into play only when the Government activity in question violates some protected right of the defendant." *See United States v. Payner*, 447 U.S. 727, 737 n.9 (1980) (cleaned up) (quoting *Hampton v. United States*, 425 U.S. 484, 490 (1976)).  Defendant's allegations fall well short of what is

5

required to warrant dismissal of the indictment, and the Court cannot conclude that the alleged Government conduct is shocking to the conscience or offends a sense of justice.

Defendant also argues that the Court may dismiss the indictment under its supervisory power in order to "censure the egregious and outrageous conduct by the Government in pursuing its investigation." **Doc. 61, at 17–18**; **Doc. 77, at 7–10**. The Court must reject this argument.

A court may dismiss an indictment by relying on its supervisory powers. *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). "The supervisory powers theory is premised on the federal courts' inherent ability to 'formulate procedural rules not specifically required by the Constitution or the Congress.'" *Id.* (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)). The supervisory powers theory also "focuses on deterring illegality and protecting judicial integrity." *Id.*

Under the cases cited by Defendant, if the complained-of government conduct does not rise to the level of a due process violation, the court may nonetheless dismiss an indictment under its supervisory powers: "[1] to remedy a constitutional or statutory violation; [2] to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or [3] to deter future illegal conduct." *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991); *see also Hasting*, 461 U.S. at 505. However, dismissal of an indictment on supervisory grounds "is a drastic remedy, plainly inappropriate without full consideration and rejection of more narrowly tailored measures to deter improper prosecutorial [or Government] conduct." *United States v. Bolain*, 933 F.2d 1019 (10th Cir. 1991).

Here, Defendant has failed to show that dismissal is warranted under the Court's supervisory powers. First, as discussed above, there is no basis for the Court to conclude that the Government's conduct is outrageous in violation of the Fifth Amendment Due Process Clause; nor

has Defendant asserted any other constitutional or statutory violation.  Second, Defendant has not presented any facts showing that the Government's conduct impaired this Court's integrity as an independent body.  Finally, there are no allegations of illegal conduct by the Government or its agent.  Thus, the Court must reasonably conclude that the sum of the Government's conduct and its decision to charge Defendant in this case is not "flagrant and unconscionable," *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983), and does not require the "extreme measure" of dismissing the indictment.  *Barrera-Moreno*, 951 F.2d at 1093.

## CONCLUSION

Defendant has failed to show that dismissal of the indictment is warranted under the outrageous conduct defense or this Court's supervisory powers.  **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Indictment Based on Outrageous Government Conduct (**Doc. 61**) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE